(*a*) The decision of the chancellor in this case was reversed, upon appeal to the court for the correction of errors, in December, 1842. (*See* 4 *Hill's Reports.*)

---

### The American Insurance Company *vs.* Oakley and others.

As a general rule, when a suit is commenced or defended by a solicitor of the court, or any other proceeding had therein, the court does not enquire into his authority to appear for his supposed client.

But where the party for whom the solicitor appears denies his authority, and applies to the court for relief before the adverse party has acquired any rights or suffered any prejudice in consequence of the acts of such solicitor, the court may correct the proceeding, and compel the solicitor to pay the costs, to which the parties have been subjected in consequence of his improper interference.

If the adverse party however has acquired rights, or been subjected to costs, by proceedings in the name of a party who denies the authority of the attorney or solicitor who commenced such proceedings, and the attorney or solicitor is solvent and responsible, the court usually allows the proceedings

to stand; and leaves the party injured to his remedy against such attorney or solicitor, by a summary application to the court or otherwise.

A corporation may be bound by the acts of its agents, although such acts have not been authorized by a deed or power in writing under its corporate seal, or even by a written instrument not under seal, except in cases where by the statute of frauds or otherwise the contract, if made by a natural person, must be reduced to writing to be valid.

The acts and assent of corporations, like those of individuals, may be inferred from other facts and circumstances although such acts or assent are not evidenced by writing.

Where the president of a corporation authorizes an attorney or solicitor to prosecute or defend a suit, or to commence any legal proceeding in which the corporation is interested, the attorney or solicitor will be authorized to appear for the corporation, and such corporation will be bound by his acts as their attorney or solicitor. And if the president exceed his authority in retaining such attorney or solicitor, the corporation must look to him for any damages sustained in consequence of such unauthorized act.

Where a purchaser at a master's sale has been prevented from completing his purchase, and has been kept out of the possession of the premises and out of the receipt of the rents and profits thereof, by an appeal from an order denying a motion for a resale, the appellant, upon the reversal of the order, will be required to fulfil his offer to give an increased price on a resale; so that the former purchaser may be enabled to obtain the interest of his purchase money which has been lying idle in the meantime.

An appeal from an order refusing a resale of the premises will not of itself prevent the purchaser from completing his purchase. And the appellant is not entitled to an order staying the purchaser from completing his purchase, and taking possession of the property without giving security for the payment of the rents and profits of the premises in the meantime, and that no waste shall be committed.

THIS was an application on the part of the Seneca County Bank to set aside an order made upon the appeal in this cause, upon the ground that the original application to the vice chancellor for a resale, and the appeal from his decision, had both been made in the name of the corporation without its authority or consent. And a cross application was made on the part of the purchaser at the master's sale to amend the order made upon the appeal, which had been settled ex parte, and by mistake was entitled in the name of a different corporation from that which was the complainant in this suit. Notice of the application to set aside the proceedings upon the appeal as unauthorized, was directed to be given to W. S. Sears, the solicitor whose name was subscribed to the petition to the vice chancellor and to the notice of

*1842.*

American Ins.
Company
v.
Oakley.

April 5.

*1842.*

*American Ins. Company v. Oakley.*

appeal ; and also to Dodge who had signed and sworn to the petition as attorney in fact for the bank.

*S. Stevens,* for the Seneca County Bank.

*O. Allen,* for Rosevelt, the purchaser.

*J. Rhoades,* for the complainants in the suit.

*J. Edwards,* for Sears, the solicitor of the petitioners.

THE CHANCELLOR. The decree upon the appeal being wrongly entitled, it is a matter of course to amend it in that respect. But as it appears to have been settled ex parte, without giving the solicitor for the appellants an opportunity to propose amendments to the same, if it is wrong in any other respect it must be corrected, so as to render it conformable to the decision of the court upon the appeal. In other words, to make it such a decree as the appellants and respondents were entitled to upon the facts of the case, consistently with the principles of that decision. Before settling the form of the decree, however, it will be necessary to dispose of the application to set aside the whole proceedings as unauthorized, which have been carried on in the name of the bank.

As a general rule, when a suit is commenced or defended, or any other proceeding is had therein, by one of the regularly licensed solicitors, it is not the practice of the court to enquire into his authority to appear for his supposed client. But if the party for whom such solicitor appears, or assumes to act, denies his authority, and applies to the court for relief before the adverse party has acquired any rights or suffered any prejudice in consequence of the acts of the solicitor, the court may correct the proceeding ; and may compel the solicitor who has assumed to act without authority to pay the costs to which the parties have been subjected in consequence of his improper interference. (*Wright* v. *Castle,* 3 *Mer. Rep.* 12. *French* v. *French,*

4 *Law Rec. N. S.* 123.   *Lord* v. *Kellett*, 2 *Myl. & Keen's*
*Rep.* 1.)   In cases, however, where the adverse party has
acquired rights, or been subjected to costs, by proceedings in
the name of a party who afterwards denies the authority
of the attorney or solicitor who has thus proceeded, the
courts are in the habit of permitting the proceedings to
stand, where the solicitor or attorney is a responsible man ;
and leaving the party injured by such unauthorized pro-
ceedings in his name to seek his redress against such soli-
citor or attorney, by a summary application to the court,
or otherwise.   (*Dundas* v. *Dutens*, 1 *Ves. Jun.* 196.   *Den-
ton* v. *Noyes*, 6 *John. Rep.* 297.   *Cox* v. *Nicholls*, 2 *Yeates'*
*Rep.* 547.   *Ex parte Stuckey*, 2 *Cox's Ca.* 283.)

In the present case there is no pretence that the solicitor,
who acted for the appellants in presenting the petition to the
vice chancellor for a resale of the mortgaged premises, and
who brought the appeal to this court and obtained a decis-
ion in their favor, is not perfectly able to respond in dam-
ages to them if he has acted without authority.   It is not
necessary therefore for the protection of their rights that
the proceedings which have been carried on in the name of
the corporation should be set aside as unauthorized, even
if the want of authority on the part of the solicitor was
fully established.

Upon a full examination of all the facts in the case, I
have also arrived at the conclusion that the solicitor had
such an authority from the officers of the bank as not only
to make his acts in this matter binding upon the corpora-
tion, but also to protect him from any claim for damages
on account of these proceedings which have been instituted
and carried on in its name and for its apparent benefit.
There is no ground for believing that the solicitor has not
acted in perfect good faith in this matter, not only in pre-
senting the petition to the vice chancellor, but in prose-
cuting a successful appeal to this court from his decision
against the application for a resale of the mortgaged premi-
ses.   Although subsequent events have rendered it doubt-
ful whether the mortgeged premises would be worth more

to the bank than the amount of Rosevelt's bid, together with the interest and costs, &c. it is very evident that when the petition was presented to the vice chancellor, and at the time of the appeal, all parties believed the premises had been struck off to Rosevelt for several thousand dollars below their fair value. And as the bank had recently redeemed the premises from the sale under an intermediate incumbrance, for the purpose of protecting their interest in the equity of redemption, it was apparently for the interest of the corporation to have a resale, that they might obtain the benefit of the surplus moneys which it was supposed such a resale would produce. Under these circumstances Dodge, who appears to have had some interest in the question, wrote to the president of the bank for authority to institute proceedings before the vice chancellor for a resale. In answer to which letter he received the written power, signed by Fellows as such president, authorizing Dodge to present a petition in behalf of the bank for a resale, and to offer an advance of $5000 upon the former bid, and do every other act in the premises which he might deem necessary, &c. Upon the faith of this power Dodge presented the petition to the vice chancellor, as the attorney in fact for the bank, in its corporate name, swearing that he was authorized to present the same as such attorney. And Sears, as solicitor for the petitioners, countersigned the petition and signed the notice of appeal. It also appears that a few days after, Clark, one of the directors of the bank, was at the office of Mr. Sears, with Dodge, and was informed of what had been done; and concurred in the propriety of appealing from the decision of the vice chancellor, without waiting to send to Seneca county for the purpose of obtaining further directions from the officers of the bank on the subject.

By the ancient common law, corporations aggregate were considered incapable of making contracts, or of appointing agents or attorneys to do any binding acts, except by a deed or power in writing under their corporate seal. But the existing law on the subject is, that a corporation may

1842.

American Ins.
Company
v.
Oakley.

be bound by the acts of its agents although not under its corporate seal, and even where they are not reduced to writing ; except in those cases where by the provisions of the statute of frauds or otherwise a contract must be in writing to render it valid, if made by a private person. And the acts and assent of corporations, like those of individuals, when not reduced to writing, may be inferred from other facts and circumstances without a violation of any known rule of evidence. In the case of *Perkins* v. *The Washington Insurance Company*, (4 *Cowen's Rep.* 645,) the president of the corporation in communicating instructions to an agent, authorizing him to receive premiums and agree to make insurances, was considered as acting by the authority of the corporation until the contrary was shown. So in this case the written power, signed by the president, authorizing Dodge to take the necessary steps to obtain an order for a resale of the mortgaged premises, to protect the interest of the bank in such property, was sufficient to authorize Dodge to present the petition, and to enter the appeal, and to employ Mr. Sears to conduct the proceedings as the solicitor and counsel for the corporation. And if the president exceeded his authority, in giving such power, the corporation should look to him for any damage it may have sustained by this act of his.

It is a matter of every day's occurrence for the presidents or other head officers of corporations to employ and retain attorneys and counsel to prosecute or defend suits, or to assist in legal proceedings in which the corporation is interested. And I doubt whether it is usual for members of the bar to take the precaution to inquire, when they are thus retained, whether there has been a formal resolution of the board of directors authorizing his retainer in the suit. I am also satisfied in this case that the directors, as well as the president of the bank, must have been aware of the fact that an application for a resale was to be made, or had been made, long before there was any attempt to repudiate the authority of the agent who had employed Mr. Sears to conduct the proceedings. And if the scarcity of

money, and the consequent depression in the value of the property, had not rendered it inexpedient for the bank to assume the payment of the increased amount offered upon the resale, I think no one would have questioned the authority given by the written power, of the 2d of June, 1841, in this matter. The application of the corporation, so far as Sears is concerned, must be dismissed with his costs of attending to oppose the same.

The only remaining question is as to the settlement of the decree in conformity with the decision upon the appeal. By referring to the opinion which was delivered upon reversing the decision of the vice chancellor, I see that I took it for granted that the actual value of the property exceeded the amount of the bid to such an extent that the appellants would still be willing to make the advance they had originally offered, and that the purchaser would be anxious to keep the property at the amount which he had agreed to pay for it. It appears, however, that both parties have altered their opinions as to the real value of the property, and that its value has in fact depreciated since the decision of the court upon the appeal. For the counsel of the purchaser, at that time, was still anxious to sustain the decision of the vice chancellor refusing a resale. If the respondent was right in supposing that he had been prevented from completing his purchase, and had been kept out of the possession of the property and the receipt of the rents and profits thereof by the appeal, I am inclined to think it would be the duty of the court to compel the appellants to make good their offer of an increased price upon a resale of the property, in order that the former purchaser might be enabled to obtain a remuneration for his loss of the interest of his purchase money, which is supposed to have been lying idle in the meantime.

But I cannot find any thing in the papers to show that the purchaser was prevented by any order of the court from paying the balance of the purchase money and taking the master's deed pending the appeal, and entering into the possession of the property. For an appeal from an order

refusing a resale would not of itself have the effect to prevent the purchaser from completing his purchase. The appeal only stayed the proceedings upon the order appealed from. And the appellants were not entitled to an order staying the purchaser from completing his purchase, and taking possession of the property in the meantime, without giving security for the rents and profits of the premises and that no waste thereof should be committed pending the appeal. After the appeal was determined against the purchaser he could not indeed have been permitted to go on and complete his purchase during the twenty days allowed to the appellants for complying with the condition upon which the resale was granted. But if the respondent was then anxious to keep the property, there was gross negligence in not drawing up the order immediately and serving it upon the solicitor of the appellants; so as to deprive them of the benefit of the decision in their favor if they did not comply with the terms of the order within the time limited for that purpose. There has been also great negligence in suffering the insolvent mortgagor to retain possession of the property, and to receive the rents and profits pending this litigation, if he has been permitted to do so; instead of having a receiver appointed to receive the income of the premises until the question in controversy between the purchaser and the bank should be settled. I see no grounds, therefore, which can justify me in settling the decree different from the terms of the decision as contained in the written opinion delivered upon the appeal, with the addition of a clause that if the appellants do not deposit the $5000 within the twenty days, the appeal be dismissed, with costs to be paid by the appellants to the purchaser and also to the complainants' solicitor; including likewise the taxable costs of both those parties upon the application to set aside the proceedings on the appeal.