Requa agt. Holmes.

# SUPREME COURT.

GLOADE REQUA and others agt. NATHANIEL B. HOLMES.

Under the present union of common law and equity jurisdictions in the same court, and a modification of its practice, a defendant, in an action of *ejectment*, may set up and rely upon such *equitable defence* as he may have to the plaintiffs right of action, and which was formerly only available by resort to a separate tribunal.

Where the court of appeals have reversed a judgment of the supreme court, and ordered a new trial; and on the second trial substantially the same evidence only is produced, this court, on a review of such second trial, are not bound to follow the decision of the court of appeals, where it appears that some material facts in the case, and some legal principles resulting therefrom, were not brought to the notice of the court of appeals, and which facts and principles have the effect to qualify and perhaps take away entirely the effect of the judgment rendered by that court.

Where a party defendant, in a suit in *partition* (in the late court of chancery), *died* pending the proceedings (after an order taking the bill as confessed, and before a referee to the master), *held*, that the suit *abated* as to such defendant, and his interest in the lands which were the subject of it, and his title then vested in his heirs at law; but this event did not remit the proceedings as if they never had been; they were open to be *revived* and resumed at the same stage of progress as they were at the time of such death.

The process by which the representatives of the deceased defendant were to be brought into court, was the service of a copy of an order to revive; but like all other process the service might be *waived*, and the party *appear voluntarily* and become an actor in the proceedings.

And where such proceedings, in partition, after the death of such defendant, were conducted to a sale of the premises, the giving of a deed to the purchaser, and the deposit of the proceeds in court, without an order to revive as to the heirs at law of such defendant,

*Held*, that the decree of sale was not a final act in the proceedings, and that the heirs at law of such defendant, having subsequently become parties and actors in suits for the distribution of such proceeds, asserting and claiming the regularity of the partition and sale, before any order to revive had been entered or served, was an *appearance* equivalent in all respects to the due service of the order to revive, and concluded them as to the regularity of the proceedings, and estopped them from denying that their title passed by the sale, as against a *bona fide* purchaser of the premises.

*Westchester Special Term, April,* 1860.

DANIEL LORD, *for the plaintiffs.*
A. J. PARKER, *for the defendant.*

BROWN, Justice. This is an action of ejectment to secure an undivided interest in certain lands in Greenburgh, Westchester county, which the plaintiffs claim as heirs at law of Samuel Requa, deceased. The premises, with other lands in the same town, belonged formerly to one Isaac Requa, who died sometime previous to the year 1826, intestate and without children, and thereupon his real estate descended to his brothers and sisters (Samuel Requa being one of the brothers), in fee simple, as tenants in common. This action was commenced in January term of this court, in the year 1844, and tried upon the question of the plaintiffs title, before the Hon. CHARLES H. RUGGLES, at Westchester circuit, in November, 1844, when the defendant had a verdict. This verdict was afterwards affirmed at a general term of this court, and judgment entered for the defendant, which was removed to the court of appeals by writ of error, and there reversed, and a new trial ordered. The defendant claims title to the premises in fee, as the grantee of one Steuben Swartwout, by deed, with full covenants bearing date May 2d, 1836. It appears from the proofs that on the 18th of April, 1826, Isaac Davids, and Julia Ann, his wife (Julia Ann being one of the heirs at law of Isaac Requa), filed their bill in the late court of chancery for a partition or a sale of the lands and real estate whereof Isaac Requa died seized. To this bill, and the proceedings consequent thereon, Samuel Requa, whose interest in the lands of Isaac Requa, the plaintiffs claim to recover, and the other brothers and sisters were made parties defendants. The suit proceeded to a decree, and a sale of the premises by one of the masters of the court, to a report and confirmation of the report of the sale and a deed of conveyance of that part of the premises described in the complaint in this action, to Steuben Swartwout, the defendant's grantor, who paid the purchase money therefor. Pending the proceedings Samuel Requa died, whereby his interest descended to the plaintiffs in this action, or to those whose estate the

plaintiffs claim. The real and only question in controversy between the parties is, whether the plaintiffs, are divested of their title by the decree and the proceedings in the late court of chancery, taken in connection with their own acts at and subsequent to that time.

The present proceeding, in its origin, was the common law action of ejectment, limited as a remedy to the trial and determination of the legal rights of those concerned, and to awarding the possession to those having the legal title. Now, however, as a consequence of the union of the common law and equity jurisdictions in the same court, and a modification of its practice, the defendant may set up and rely upon such equitable defence as he may have to the plaintiffs right of action, and which, at the time of the first trial, was only available by resort to a separate tribunal. The evidence upon both trials is substantially the same, except the new and additional fact that the plaintiffs have applied to this court, which succeeded to the jurisdiction and authority of the late court of chancery, for leave to appropriate to their own use, and have applied and appropriated that portion of the proceeds of the sales, under the chancellor's decree, to their own use, which was deposited with the court. There are, however, some material facts in the case, and some legal principles resulting from the existence of those facts, which I shall endeavor to bring out and present, which do not seem to have been brought to the notice of the court of appeals, and which there is reason to think must have the effect to qualify, and perhaps take away entirely the effect of the judgment it has rendered.

The bill of complaint in the chancery suit was regularly taken, as confessed, against all the defendants therein, on the 29th of May, 1826; and on the 18th of June thereafter, Samuel Requa, the plaintiff's ancestor, died. The usual order of reference was obtained on the 23d June. On the 24th the master's report was duly filed, and a decree granted

for a sale of the lands, with directions that the master make a report of his proceedings to the court, and reserving all other directions until the coming in of the report. On the 16th of August the sale was effected, and Steuben Swartwout, the defendant's grantor, became the purchaser. The master made his report of the sale, and on the 6th of November, of the same year, it was confirmed, and a decree entered directing the master to make and deliver the deed of conveyance to the purchaser, upon payment of the purchase money, and complying with the terms of the sale, with the usual reservation of further directions, and thereupon and on the 23d day of November, 1826, Samuel Youngs, the. master, received the purchase money, and executed to Steuben Swartwout the deed of conveyance of that date for the premises in dispute, under which the defendant in this action claims. During all this time no notice seems to have been taken of the death of Samuel Requa. The decree was against all the heirs at law of Isaac Requa, from whom the parties, complainant and defendant, derived their title. *Prima facie*, it was regular. The sale was conducted by an officer of the court of chancery, duly authorized to execute such trusts, and Swartwout purchased the property, and parted with his money upon the faith and confidence that he was obtaining the title.

By the death of Samuel Requa the suit in the court of chancery abated as to him, and his interest in the lands, which was the subject of it. His title then vested in his heirs at law, the plaintiffs in this action, and those under whom some of the plaintiffs claim. It is to be observed, however, that this event did not remit the proceedings even in regard to them to the same condition as if they never had been; but they were open to be revived and adopted; and when they were revived, they stood in the same condition, and were to be resumed at the same stage of progress as they were at the time of the death of Samuel Requa.

The proceedings to revive were quite simple. A petition, setting out the pendency of the suit, its object, the state of the pleadings, and the stage to which it had progressed, the death of the party, and the names of the persons who had succeeded to his interest in the subject matter. An order to revive, and the service of the order upon the new parties. (*Sec.* 7 *of the act concerning the court of chancery, passed April* 10, 1813; 1 *R. L.*, 488.) The process by which the representatives of the deceased defendant was brought into court, was the service of a copy of the order to revive; but like all other process the service might be waived, and the party might appear voluntarily. This is what the books of practice denominate appearing *gratis*. Appearing *gratis* is when the defendant, on being informed that a bill has been filed against him, causes an appearance to be entered for him, without waiting to be served with a subpoena. A party may likewise, in certain cases, appear *gratis* at the hearing, and consent to be bound by the decree; but in such cases it is necessary that the party should be named as a defendant upon the record. (1 *Barb. Ch. Pr.*, 81, *and the cases referred to in the notes.*) Nor was the manner of his appearance of any particular moment. It might be effected by the entry of his appearance by the clerk, by filing due proof of service of a copy of the order, and the lapse of eighty days given by the 7th section of the act, and an entry of his appearance by the party seeking to revive the suit, or it might also be effected by the party appearing voluntarily in court and becoming an actor in the proceedings. A person who became a necessary party to a suit in equity by the death of his ancestor, who appeared without the service of a copy of the order to revive and put in an answer, presented a petition or made a motion in the progress of the suit, could not afterwards object to the regularity of the proceedings for the want of the service of a copy of the order, and much less would he be allowed to claim, in an action against a purchaser in

good fath of the subject matter of the suit, that the proceedings were absolutely void. Courts could not tolerate or give countenance to a practice of this kind, without impairing the confidence which their proceedings should constantly inspire, and inflicting irreparable injury upon rights acquired by purchasers at judicial sales. A party who means to avail himself of an irregularity in the progress of a cause, must make his objection in due season, and before the other side has compromised itself by his silence, and a person upon whom the law has cast an interest in an estate, which is the subject of a suit in the courts for a sale and partition, must abstain from becoming an actor in the proceedings, if he designs at some future time to assert his title upon the ground that he was not made a party, and therefore not concluded by the judgment or decree.

It is necessary to a true estimate of the effect of the acts of the heirs at law of Samuel Requa, to which I shall refer presently, to bear in mind that the proceedings in the chancery suit were not ended by the sale of the lands under the decree, and the execution and delivery of the deeds. The proceeds were still at the disposal of the court. They were to be distributed, under its direction, amongst those entitled to them, and for all the purposes of distribution they were still to be regarded as real property. They were still subject to the widow's dower, and to the debts of the ancestor. The conversion from land into money was the result of the sale, the act of the law. The land was incapable of partition, so that each of the tenants should enjoy his share in severalty, and therefore the decree of the court had converted it into money, a medium in which a just distribution could be made. The parties could not, however, have both the land and its proceeds in money. The heirs of Samuel Requa could not have the moneys arising from the sales, applied to pay their ancestors debts, and to satisfy his widow's right of dower, and then claim

and recover the lands themselves out of the possession of the purchaser, whose money they had thus been enabled to appropriate. This, I think, is too plain for argument, and yet this is precisely what the heirs of Samuel Requa, the plaintiffs, claim the right to do, with the sanction and approbation of the highest judicial tribunals of the state.

In August, 1847, the plaintiffs in this action first appeared and became actors in the chancery suit. No order to revive had yet been obtained, and the proceeds of the sale had not been distributed. The occasion of their appearance was this: Minott Mitchell, a creditor of Isaac Requa, the common ancestor, had filed a bill in the court of chancery against his heirs at law, the complainants and defendants, in the partition suit, including Jacob Requa, a son of Samuel Requa, in his character of administrator, &c., of Isaac Requa, for the recovery of his debt, and had obtained an injunction restraining the distribution of the moneys arising from the sales in the suit in partition. The plaintiffs in this action, together with the other defendants in the partition suit, by William N. Dyckman, one of the solicitors of the court, presented their petition to the court, stating the facts to which I have referred, praying for a reference to ascertain and report the sum due to Minott Mitchell from the estate of Isaac Requa, and for a dissolution of the injunction, and such other and further relief as might be just. This proceeding resulted in an order of the court, taking from the proceeds of the sale the sum of $500, and placing it in the hands of the assistant register, to answer any decree which Minott Mitchell might obtain for the recovery of his debt, and for the dissolution of the injunction. William Van Wart, surviving executor of John Van Wart, deceased, another creditor of Isaac Requa, had also filed a bill in the court of chancery against his heirs at law, including the heirs at law of Samuel Requa, for the same purpose as that filed by Minott Mitchell, and had also obtained an injunction restraining the distribution of the

proceeds of the sale in the suit in partition; and thereupon the heirs at law of Samuel Requa, acting in concurrence with the other heirs at law of Isaac Requa, defendants in the chancery suit, procured another order to be entered in the partition suit, taking from the proceeds of the sales of the lands $1,593.20, and delivering the same to the assistant register, with directions to invest it on bond and mortgage, at interest, and pay such interest half yearly to Harriet Requa, the widow of Isaac Requa, for and during her natural life, in satisfaction of her dower in the lands sold under the decree. In these proceedings the plaintiffs in this action, or those whose estate they claim, represent themselves, and are named as parties defendant in the suit for the partition of the lands. On the 1st of October, 1827, the plaintiffs in the last named suit presented their petition to the chancellor, setting out the proceedings therein, the decree for the sale, and the sale of the lands by the master under the decree, the death of Samuel Requa, and giving the names of the plaintiffs and heirs at law of Samuel Requa, who were entitled to an interest in the proceeds of the sale of the lands sold by the master; and thereupon the usual order was obtained and entered, that the action in all things stand revived against such heirs of Samuel Requa. In August or September, 1841, such heirs of Samuel Requa, by William N. Dyckman, their solicitor, presented and filed with the court of chancery their petition, representing that they were parties to the suit in partition, setting out the decree for the sale, and the sale of the lands, and the payment of the purchase money, the deposit of the two sums to which I have referred, to abide the result of Minott Mitchell's suit, and for the satisfaction of the widow's dower; and that the residue of such purchase money had been paid by the master into the hands of James Smith, the solicitor, for the plaintiff in the partition suit. That after the decree of sale, on or about the 1st day of October, 1827, Samuel

Requa died, and the suit and proceedings were duly revived against the heirs at law of Samuel Requa, giving their names, and praying for an order of reference to report the sum chargeable to James Smith, the solicitor, for the moneys so received by him, with the interest, and for an order that he deposit such sum with the assistant register, to the credit of the partition suit. This petition is accompanied by the usual notice to Smith, of the time and place when it would be presented, and by Smith's affidavit in reply thereto; but what order was taken thereon by the court, or whether such petition was prosecuted further than the presentation and the filing thereof with the court, does not appear. Enough, however, appears from these papers and applications, to show that the plaintiffs, or those whose title they claim, regarded and represented themselves as parties to the partition suit, and that portions of the proceeds of the sale were actually appropriated and applied to the uses and purposes which they indicated and desired. While they were thus claiming and exercising the right to be heard as parties in the suit, and to induce the court to dispose of the proceeds of the sale in payment of their ancestors debts, and in satisfaction of his wife's dower in the lands sold, they represented to the court that the decree of sale was entered and actually executed in the lifetime of their father, Samuel Requa, and that he died on or about the 1st day of October, 1827, and not on the 18th day of June, 1826, as they now claim to prove, and that the suit was duly revived against his heirs after such decree and sale. They or their grantors appeared and represented themselves to the court, as parties having a right to be heard, both before and after the entry of the order to revive. The time of its entry thus becomes a matter of no moment. The court of chancery had a right to confide, and did confide in the truth of what they said. It had a right to act, as it did most certainly act, upon the truth of their assertion, and assume that the decree was entered,

and the sale was effected in the lifetime of Samuel Requa, and the suit duly revived after that time. Unless the formulas of the courts, and a literal observance of their rules of practice are to be deemed of more value than the legal and equitable principles which they are designed to assure, these plaintiffs will not be suffered to gainsay now what they solemnly asserted at that time. Mr. Justice Bowen, who delivered the opinion of the court of appeals, observes : " Had the order reviving the action been made prior to the decree directing the sale, but subsequently to the other proceedings in the action after the death, and had the heirs appeared in the action without objecting to or moving to set aside such subsequent proceedings, they would doubtless have been bound by the decree. They would in that case have been parties thereto ; but I do not see how the order, especially without being served upon them, could have had any retroactive effect." I have already endeavored to show that the appearance of the new parties as actors in the cause, without service of a copy of the order to revive, was equivalent in all respects to the due service of the order, and the proof is quite clear that the heirs of Samuel Requa did so appear both before and after the entry of the order. I have also attempted to show that the decree of sale was not a final act in the proceedings. It was but a step in their progress, which was open to be corrected, if irregular, to be confirmed or set aside, as the court might decree right ; and if the sale and execution of the decree intermediate the death of Samuel Requa, and the order to revive against his heirs was an irregular proceeding (as it doubtless was), I respectfully submit it was one which the parties concerned might waive, and which, by their omission to correct by a motion to the court, and more especially by adopting what had been done, and claiming the proceeds of the sale, they must be deemed to have waived. Again, the same learned justice says : " If the plaintiffs had received their due proportion of the proceeds of the sale,

probably they would have been estopped from denying that
their title passed by the sale.   At all events they could, in
that case, be compelled by an action brought against them
for that purpose, either to convey their interest in the pre-
mises, or to refund the purchase money received by them ;
but it does not appear that they, or any of them, have
received a dollar of the proceeds of the sale, or that any
part has been applied to their use." It is to be observed
that whatever remedy, in the case supposed by the judge,
the defendant had against the plaintiffs for a conveyance
of the premises by way of action, may now be set up as
matter of defence to the plaintiffs action; and I respect-
fully submit it, as a further observation, that it can make
no difference in principle whether the proceeds of the sale
came into the hands of the plaintiffs themselves, or were
applied and paid over to another by their express direction.
The proof shows now, as it showed upon the former trial,
that $500 of the proceeds was set aside to pay a debt due,
or thought to be due by the ancestor, and $1,593.20 invested
at interest for the use of his widow.   As this disposition
was made by the court at the request of the heirs of
Samuel Requa, it is not in my power to distinguish it in
principle from a payment over to themselves.

It is also said in the opinion to which I have referred,
and so also upon this trial, that William N. Dyckman, the
solicitor who appeared for the heirs, and presented the
petition and procured the orders in regard to the proceeds
of the sale, was not authorized by any of them so to
appear.   This I think is a misapprehension.   The testi-
mony of Dyckman was read upon the present trial from
the bill of exceptions, upon which the argument was heard
in the court of appeals.   He says :  " He was first employed
by Jacob Requa, a son of Samuel Requa, and Daniel Requa,
his uncle, which must have been shortly after the death of
Samuel Requa, for he was employed in relation to the suit
instituted by Minott Mitchell against the heirs of Isaac

Requa. He never was retained by the heirs of Samuel Requa specially in the partition suit, and that he was not retained by them at all until after Minott Mitchell had commenced his suit, and when first employed supposed the proceedings in the partition suit regular. The sale had been made. He was first employed in the suit of Minott Mitchell, to get rid of his injunction, to the end that distribution might be made." He was not employed specially in the partition suit. The sale had taken place; he supposed the proceedings regular, and there was no dispute about the title or the rights of the tenants in common; but he was employed to remove the injunction of the creditors of the ancestor, which impeded the distribution of the proceeds, to the end that his clients, the present plaintiffs, might take their share of the proceeds; and he could have no other useful employment for his clients in the premises. To do this his clients necessarily became actors in the partition suit, and hence the petitions and the orders made in the partition suit. This was employment enough for all the purposes of this argument, for it was an employment with respect to the subject matter of the suit in partition, and whether it then existed in land, or the money proceeds of the land, made no sort of difference. He was, therefore, upon his own showing, fully authorized to do all that he did in relation to the proceedings in the suit. The authority of an attorney or solicitor to appear and defend, will be presumed and taken for granted until it is made to appear otherwise. " As a general rule when a suit is commenced or defended, or any proceeding is had therein by a solicitor of the court, it is not the practice to inquire into his authority to appear for his supposed client; but if the party for whom he appears, or assumes to act, denies his authority, and applies to the court for relief before the adverse party has acquired any right or suffered any prejuduce in consequence of the acts of the solicitor, the court may correct the proceeding, and compel the solicitor to pay

the costs to which the parties have been subjected.   If the adverse party has acquired rights, or been subjected to costs by proceedings in the .name of a party who afterwards denies the authority of the solicitor or attorney, the courts are in the habit of permitting the proceedings to stand, where the solicitor or attorney is a responsible person, leaving the injured party by such unauthorized proceedings in his name, to seek redress against the solicitor or attorney, by a summary application to the court or otherwise.   (*American Insurance Company* agt. *Oakley*, 9 *Paige*, 496.)   When an innocent purchaser is substituted for the adverse party, and exposed to the loss of the subject purchased, and when the case is marked by the absence of all effort to correct or set aside the unauthorized acts, the rule applies with additional force.   I have thus discussed the case upon the same facts as they substantially appeared upon the first trial; and I have endeavoured to bring out some views which were not brought to the notice of, and certainly were not considered by the court of appeals in rendering its judgment.   I think they are decisive against the right of the plaintiffs to recover in the action.   I now proceed briefly to examine the effect of the additional evidence produced upon the second trial, upon the issue made by the supplemental complaint and answer.

During the pendency of the original suit, and on the 6th of December, 1852, Clara Requa, one of the plaintiffs, died intestate and without issue, and her estate, if any, in the premises descended to her surviving brothers and sisters. Harriet Requa, the widow of Isaac Requa, likewise died some time in October, 1854, whereby the parties in the partition suit became entitled to the sum of $1,593.20, invested by the court of chancery for her benefit.   Jacob Requa, one of the sons of Samuel Requa, thereupon applied to this court, which had succeeded to the jurisdiction of the late court of chancery, by petition, setting out the existence of the fund, the death of the tenant for life, and

the names of the persons entitled to distributive shares thereof; and praying for the usual order of reference. This petition was sworn to on the 17th May, 1855, and the order of reference was obtained at the special term held in the city of New York, on the 22d of May, in the same year. The referee made the usual examination, and took the usual means to bring in all the parties interested, including the plaintiffs in this action, or those under whom they claim; and on the 24th of October, 1855, he made his report. It was confirmed on the same day, and an order for the distribution of the fund was obtained at the special term held in the city of New York. In these proceedings the plaintiffs in this action, or those under whom they claim, are named in the title as parties defendants in the partition suit from the proceeds of the sales in which the fund proceeded; and they are also named as distributees, and in the referees report, and the order for confirmation and distribution, the shares to which they are severally entitled, and the amounts thereof are particularly designated. The plaintiffs, or those under whom they claim, thereupon made their power of attorney to Jacob Requa, bearing date the 5th day of November, 1855, and duly acknowledged before a duly qualified officer, by which it authorized and empowered him to demand and receive from the chamberlain of the city of New York, in whose custody the fund was, three distributive shares of the same, and to execute receipts therefor. The money was accordingly paid over to their attorney, and his receipts given for the same, were produced and read upon the trial. It also appeared upon the trial, that on the 15th day of April, 1858, James Requa, one of the original plaintiffs in the action, died intestate, and the present plaintiffs, Mary Augusta Requa, Isaac B. Requa, Francis M. Requa, Gloade Requa, Susan Requa, Winfield S. Requa, and Clara Requa, became his heirs at law. The plaintiffs also read in evidence a deed of conveyance from Jacob Requa to Nathaniel Requa, dated

June 28th, 1859, for his interest in the estate of Clara Requa in the premises; and also a deed from Amy Wiltse, formerly Amy Requa, dated June 28th, 1859, to Gloade Requa, for her estate in the premises.   After what I have said upon the state of facts which existed and appeared upon the first trial, any further comment upon the additional evidence is quite unnecessary.   The application for the receipt of a part of the proceeds of the sales in the partition suit in 1855, are acts of the same character, and tending to the same legal results as those which occurred in 1827 and 1841.

The title of the defendant to the premises in dispute may be sustained upon two grounds : first, the sale to his grantor, under the decree in partition, professed to be a sale of all the lands described in the deed, and not of an undivided interest therein.   He intended to purchase in good faith, and supposed he had purchased the entire property.   It was for that, and nothing less, he paid his money.   In executing the decree and selling the lands, the court of chancery may be regarded as the trustee for the owners and parties in interest.   The plaintiffs in this action, or those under whom they claim, having appeared in the action, representing themselves as parties thereto, and entitled to be heard; and the court having applied the proceeds of the sale to such uses as they directed, they must be deemed to have adopted, ratified and affirmed the sale, and all that the court of chancery did in the premises. In *Baker* agt. *Braman* (6 *Hill*, 4) it was held that a party might by his acts waive the benefit of a statute, as well as a constitutional provision in his favor; that where a private road was laid out in violation of the provision of the constitution of 1821, the parol consent of the owner, manifested by his bringing an action for the damages awarded, was an adoption of the machinery provided by the statute, and effectuated the grant.   This doctrine is affirmed by the court of appeals, in *Embury* agt. *Counin* (3 *Com. R.*, 511).

Second, the acts of the plaintiffs, to which I have referred, operate as an estoppel *in pais*. This class of estoppels are defined by Mr. Justice NELSON, in *The Welland Canal Company* agt. *Hathaway* (8 *Wend.*, 483). As a general rule, he says: " a party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it ; and when such denial will operate to the injury of the latter. The acts and declarations of the party operate against him in the nature of an estoppel, when in good conscience and honest dealing he ought not to be permitted to gainsay them." In *Dezell* agt. *Odell* (3 *Hill*, 215), Mr. Justice BRONSON says : " before a party is concluded it must appear, first, that he had made an admission clearly inconsistent with the evidence he proposes to give, or the title or claim he proposes to set up ; second, that the other party has acted upon the admission ; and third, that he will be injured by allowing the truth of the admission to be disproved." It was said upon the trial that neither the defendant nor his grantor had acted upon the faith of the plaintiffs representations, and therefore one of the material and essential elements of an estoppel *in pais* was wanting. This I apprehend is a mistake. The plaintiffs made no representation whatever to the defendant or his grantor. They did not deal with either of them. The representations that Samuel Requa had died after the decree and the sale of the lands, and that the plaintiffs were parties to the action, and entitled to the proceeds of the sale, was made first to the court of chancery and afterwards to this court. The courts held the funds not as their own proproperty, nor for the government of the state, but for the owners of the lands, if the title had passed, and if not, for the purchaser who had paid the money ; and in relying upon the truth and good faith of the plaintiffs representations, and parting with defendant's grantors money, the courts acted for him, and the act must have the same effect

as if done by him, and the plaintiffs are concluded by what was done.

The defendant is therefore entitled to judgment, and to recover his costs of the action; and he may also, if so advised, make it a part of the judgment, that the plaintiffs be perpetually restrained from asserting any title to the premises in question, and may take an order amending his supplemental answer, so as to claim this additional relief.