Wilson, J.,
delivered the opinion of the court.
In April, 1893, the defendant, The First National Bank of Rico, was the owner of a promissory note for the sum of $5,000, executed by one A. B. Roeder. Before maturity and for value, it sold and indorsed the note to Hockaday & Kill-gore. When the note became due, the holders demanded payment of the makers, which being refused, the note was protested for nonpayment, and proper notice served upon the bank. In the mean time, the bank had temporarily suspended payment, and being desirous of resuming business, *537 agreed with Hockaday & Killgore that it would issue to them interest bearing time certificates of deposit for the amount of this note, as it was doing with its depositors and other creditors, upon condition that they prosecute a suit by attachment against Boeder, which they had commenced about this time at the request of the bank, and if the money was collected by suit, that they would return to the bank the certificates. This agreement was in writing, of date August 1, 1893, and was signed on behalf of the bank by its president, and by Hockaday & Killgore. It recited inter alia, the agreement and promise of Hockaday & Killgore that they should prosecute the attachment suit so commenced against Boeder “ in every way possible to collect the same.” This suit grows out of one clause in this agreement, which reads as follows: “ It is further agreed that the said The First National Bank of Bico will advance the necessary funds to pay the expenses and attorneys’ fees of prosecuting said suit against said Boeder; and in consideration therefor, said Hockaday & Killgore hereby agree that they will commence no suit against said bank before the first day of March, 1894, and then only for such sum as shall then be due upon said obligation of said Boeder to said Hockaday & Killgore.” About the time of the execution of this contract, Mr. Garrison, president of the bank, informed Hockaday & Killgore that Boeder was the owner of some mining property in Dolores county which had not been seized under the writ of attachment already issued, and requested that another writ be issued, and that this property be levied upon. In pursuance of this, another writ was issued, and forwarded to Mr. Pulliam, the attorney for the bank at Bico, who, after examination of the records, delivered it to the sheriff with directions to levy it upon the mining property designated. Thereafter, The Bico-Aspen Consolidated Mining Company intervened in the attachment suit, claiming that at the time of the levy under the second attachment writ, it was the owner and in possession of the property levied upon, and praying judgment against Hockaday & Killgore for damages *538 for the wrongful levy. • Upon the trial of the intervention, judgment was rendered, in favor of The Rico-Aspen company for the possession of the property, and against Hockaday & Killgore for $300 damages and costs of suit. Judgment was rendered in the original suit against Roeder, and was subsequently paid. Thereafter, Hockaday & Killgore presented to defendant a bill in the sum of $1,576.05, alleged to have been paid out and expended by them for expenses and attorneys’ fees in prosecution of said suit, in pursuance of their contract. Upon the refusal to pay, this suit was instituted by plaintiff, to whom it was alleged Hockaday & Killgore had assigned all their rights, and rights of action under the contract. The defendant answered, denying that the second writ of attachment was issued or levied at its instance or request, and denying that there was due from defendant to plaintiff any sum on account of said contract in excess of $417.40. The second clause of the answer, upon which the chief contention arises, is as follows: “ Upon information and belief, the defendant denies that hr prosecuting the suit against the said Roeder mentioned in the complaint, Hockaday & Killgore, or either of them, ever became liable for, or paid or disbursed the sum of $1,658.75, or any sum in excess of five hundred dollars for expenses and attorneys’ fees or either thereof, necessarily or at all incurred by them or either of them in the prosecution of said action.” Upon the trial defendant claimed and offered to show that a portion of this bill was for expenses incurred in the defense of the intervention suit. The court refused to admit such testimony, the defendant excepted, and offering no further testimony, the court instructed the jury to find for the plaintiff, which was accordingly done. Defendant brings the case here on error.
Substantially all of the matters in dispute, and all of the assignments of error, are covered, and will be settled by the determination of one question. Was the defendant liable for the expenses and attorneys’ fees incurred in defending against the intervention? We think that it was.' It is true that an *539 intervention in attachment is in some respects in the nature of an independent suit. This arises, however, rather from its result, and the judgment which may be rendered, than from special similarity in the proceedings. In its result, it is of course similar to a replevin suit. Otherwise, it is a special statutory proceeding, intended to prevent a multiplicity of suits by a settlement in one action of all matters which would properly arise under the attachment. In other words, it is a necessary incident to an attachment suit, and becomes a part of it. It is an expeditious method, provided by statute, for the determination of disputed ownership and right to possession of property seized under the attachment writ. Hockaday & Killgore had bound themselves to prosecute the attachment suit against Boeder “ in every possible way to collect the same.” In doing this, it was a part of their duty to resist the attack upon the ownership of the property; otherwise, if judgment was rendered against the principal, it might be of no avail. The defense of the intervention was in aid of the prosecution of the original suit. When the bank authorized and hound Hockaday & Killgore to prosecute the attachment suit to a conclusion, it authorized and bound them to prosecute or defend, as the case might he, all ancillary proceedings growing out of the suit. They could be held responsible only for the exercise of a reasonable and sound discretion in carrying out the authority and power vested in them. This was matter for affirmative defense, and was not raised by the pleadings.
It is contended, however, that the agreement referred only to the suit in attachment as then instituted and pending, and did not cover the action of Hockaday & Killgore in the issuance of the second writ of attachment, and in the seizure of property thereunder, out of which grew the intervention proceeding. It is a sufficient answer to this, even if we admit it, which we do not, that, if the contract was subject only to the narrow, construction claimed for it, the issuance of the second writ of attachment and the proceedings thereunder were at the request of the president of the hank. That he *540 had the power to do this on behalf of the bank, there can be no question. The bank was really the party in interest in the suit. Hockaday & Killgore, the plaintiffs, were amply secured, and whatever they recovered was for the benefit, ultimately, of the bank. If they failed to recover, the loss would fall upon the bank. The president, therefore, stood in the same relation to the suit, so far as his power to direct proceedings therein and bind the bank was concerned, as if the bank had itself been plaintiff. That the president of a banking corporation may institute and carry on legal proceedings to protect its interests and to collect demands or claims due to the bank cannot, we think, be successfully questioned either on principle or authority. Morse on Banks and Banking, p. 144; American Ins. Co. v. Oakley, 9 Paige, 496; Mumford v. Hawkins, 5 Den. 355.
Moreover there was no attempt or offer in the case to plead or show that the action of the president was originally wrongful, or in excess of his authority, or that it had ever been repudiated or questioned by the directors. As a result of his action, the bank escaped a suit upon its indorsement while financially embarrassed, judgment was recovered against the maker of the note and was subsequently collected, thereby relieving the bank from its liability to pay a large sum of money. The trial court therefore did not err in refusing to admit evidence as to what had been paid on account of the intervention, and what on account of the original suit.
The trial court was also correct on another ground. The answer did not put in issue the reasonableness or necessity of any of the expenses claimed to have been incurred by the plaintiff. It was simply a denial that they had incurred the amount of expenses as claimed. If it had been desired to dispute any portion of the account on this ground, it should have been set up as affirmative matter. As it was, there was no attempt to do tins, and the testimony offered was therefore not responsive to any issue raised by the pleadings. A bill of particulars could have been demanded by the defendant, and any one or more items could have been attacked, but in *541 order to create an issue as to any of them, it must have been done by affirmative averments in the answer.
This disposes of the case. There were some minor questions raised, upon which error has been assigned, but they are included within the determination of the main question. The judgment will be affirmed.

Affirmed.