# In the Court of Common Pleas of Lancaster County.

## McPHERSON, Adm. v. McPHERSON.

A party, when sued, may appear in court in person and waive service, or he may employ counsel to enter an appearance for him, and in either case service by sheriff is dispensed with. Where, however, a sheriff, in whose hands a summons is placed for service, prevails upon an attorney (who was in no way authorized) to accept service for the defendant and judgment by award of arbitrators is obtained against said defendant who was not served with summons, the award and judgment will be set aside.

The fact that the attorney notified the defendant by letter of the acceptance of service does not alter the case.

**Rule to strike off award of Arbitrators.**

Opinion delivered by

LIVINGSTON, J.    The summons in this case was issued Sept. 6, 1873, and service accepted by D. W. Patterson, Esq., September 8, 1873.

Application to refer entered by plaintiff's counsel, Sept. 11, 1873, and served September 12, 1873, on D. W. Patterson, Esq., attorney.

Arbitrators were chosen by plaintiff's counsel and James R. Patterson, Esq., who attended for his father, D. W. Patterson, Esq.

The arbitrators met on October 18, 1873, and made an award in favor of plaintiff for $3,500. On December 8, 1873, a *Fi. Fa.* was issued and defendant's personal property levied on, and on December 17, 1873, the defendant filed an affidavit upon which the *Fi. Fa.* was stayed, and the present rule to show cause why the award of the arbitrators should not be stricken off was granted.

The testimony presented to the court shows clearly and free from all doubt that there was no service of summons upon William McPherson, the defendant.

That D. W. Patterson, Esq., the attorney who accepted service, was not employed by the defendant as counsel for him ; that he never was authorized to accept or waive service for defendant, or to act as his counsel in this cause, nor had he any authority, either general or special, to appear as counsel for defendant in any case.

That it was at the instance and urgent solicitation of the sheriff, whose duty it was to *serve* the summons, that D. W. Patterson, Esq., accepted service, *the Sheriff stating that he had not time to go down and make the service upon the defendant.*

That Col. Patterson then wrote to the defendant stating that he *had accepted service,* and asking him if *he was the person sued.* That after the application to refer was served upon him, he again wrote to defendant informing him thereof, and wrote to him also after the award, (two of the letters having been received by Wm. McPherson, the defendant). That defendant took no notice of the letters, never recognized Mr. Pat-

terson as his attorney, nor recognized, nor ratified any of his acts as such. That Mr. Patterson finding that defendant did not answer his letters, nor recognize him as his counsel on the day of arbitration, went before the arbitrators, and gave notice to them, as well as plaintiff's counsel, *how* and *why* he had accepted service, and that McPherson, the defendant, never had sanctioned nor approved his action in this case, and then withdrew from the case, and that *after being thus notified,* plaintiff's counsel proceeded with the case, and presented their testimony to the arbitrators, who made an award in favor of plaintiff as above stated:

Now, what had Wm. McPherson, the defendant, to do with these proceedings, or any of them? Was he before the Court? What was done to bring him within its jurisdiction?

Our Acts of Assembly prescribe four methods of serving a summons.

1st. By reading the writ in the hearing of the defendant.

2d. By making the contents thereof known to the defendant, and giving him a true and attested copy of the writ.

3d. By leaving a true and attested copy at defendant's dwelling house, in presence of and with an adult member of his family. And

4th. Where a defendant resides in the family of another, by leaving a true and attested copy at the house where he resides, with an adult member of the family in which he resides.

And if the *sheriff* had simply performed his duty, and *served the summons,* or if issued too late, returned it *"tarde venit,"* instead of going about importuning and insisting upon a member of the bar to accept service for the defendant, and relieve him of the performance of this duty, and, at the same time, enable him to pocket the fees and mileage for a service, and the counsel applied to had not intermeddled, where he had not been spoken to, nor employed, and apparently attempted to push himself into the cause for the purpose of causing the defendant to employ him, we should not have been called upon to consider the question now before the court. But we must take the case as presented to us.

A defendant may, if he see proper, when sued, appear in court in person, and waive service, or he may employ counsel to enter an appearance for him, and in either case, service by sheriff is dispensed with. But the case before us presents a different aspect. A summons was regularly issued and placed in the hands of the sheriff for service, who, instead of serving it, prevailed upon an attorney (who was in no way authorized), for his own ease, convenience and accommodation, to accept service for the defendant, and in consequence of this improper action on the part of the sheriff and counsel, a judgment has been obtained by ar-

bitration against a defendant, who has never been served with a summons nor legally before the court. This award or judgment we are now asked to set aside.

The question has been ably argued by counsel, and many cases have been cited. Upon full examination, however, it will be found that but few of them have a direct bearing upon the present case. In 9 Paige, 496, the Chancellor found that the *counsel had sufficient authority* from the officers of the Bank, not only to make his acts binding, but also, to protect *him* against any claim for damages, by reason of his action in the case.

In 2 Har & Gill, it is said, that the appearance of an attorney, without proof authority, derived from a defendant, does not, *per se*, invalidate the judgment. But in that case it appears that the defendant appeared in court voluntarily, and that subsequently judgment was entered against him by default, on his failure to plead.

In 5 Har. & Johns, judgment was properly entered against the *defendant*. Garnishees were summoned, who appeared by counsel, and who pleaded *"nulla bona."* At the trial, plaintiff read in evidence certain written certificates which were admitted by the garnishees to be in their handwriting, stating that at the time of the laying of the attachment they had funds belonging to defendant, and that they had never authorized any one to appear for them to contest the same. The court refused to strike off the appearance of counsel on Plaintiff's request, and the counsel appeared in and tried the cause.

In 2d Md. Chan. Rep. 143, the court held that the authority of counsel, received from a *portion* of the members of the Board of Trustees of a church was sufficient and refused to dismiss the bill filed by him.

In 1 Tyler, 300, the counsel had been retained by one of the defendants, and no testimony was offered to show that he had not been properly retained for all.

In 1st Blackford, the defendants were sued as partners, and the names of all the defendants frequently appear on record as being before the court in person, and it was not even suggested, that the attorney had not authority to enter an appearance for all the defendants.

In 9 Wend. 494, it is said, when a suit against several defendants is commenced by *declaration*, the proceedings will not be set aside, although the *declaration* was served on all, if an attorney has appeared and put in a plea for all. In this case there was no pretence that counsel had not been regularly employed to appear for all the parties sued.

In 7 Pick. the attorney, though not formally employed at the time he signed the demurrer, was afterwards employed, and *then* wanted to *undo* what he had *previously done*, and the court refused to permit him to do so.

In 1 Binn. 214, there was no evidence that the attorney was not authorized to enter an appearance for both defendants. It was merely argued from the fact that the return of the sheriff, as to one, was *nihil,* and there was no power of attorney on file ; that, *therefore*, the attorney was not authorized to appear for the one not served. And in the same book, 469, the defendant had employed, recognized and consulted with the attorney.

In 2 Binn. 245, the attorney *was employed* in the cause by one party and entered an appearance generally. The court held that he must be presumed to appear for both.

In 2 Yeates, 546, it is said : The act of an attorney binds his client. In that case there was a motion to set aside a judgment entered in an amicable action. The defendant made affidavit that he had never employed the attorney to enter the amicable action. One of the plaintiffs made a counter affidavit, stating that *defendant* had told *him* that he *had* spoken to the attorney to enter the action. The court, in consequence of these conflicting affidavits, allowed the judgment to remain as a lien, but permitted the defendant to contest the plaintiff's demand in point of law.

In 6 Howard, 163, where a citizen of Virginia, sued in the Circuit Court of Louisiana two persons jointly, one of whom was a citizen of Louisiana, and the other of Missouri, and an attorney appeared for both defendants, the citizen of Missouri, was held to be at liberty to show that the appearance for him was *unauthorized*, and if he could do so, *he was not bound by the proceedings of the court, whose judgment as to him, is a nullity.*

In 10 Har. 195, there was an attempt to inquire into the regularity of the judgment in a *collateral proceeding*, and in *such case* the court say, "If it is confessed by an attorney, it is conclusive of his authority," and say further, that as between the original parties, "Where an attorney appears without authority *and confesses judgment*, the remedy is against him, *or, in a proper case, application may be made to open the judgment.*"

And in Campbell v. Kent. 3 Penna. Rept. 72, it was held that a judgment confessed by an attorney-at-law, by authority of a warrant from the wife of an absent debtor is *void* as to subsequent judgment creditors, even though ratified and confirmed by the debtor, after the entry of other judgments against him ; and further, that "Whatever may be done upon application to the court by a party to be relieved from a void or voidable judgment, the same result may be obtained upon the application of a *bona fide* creditor of such party." Judge Gibson dissenting.

We find, therefore, that there has not been a single case cited by the learned counsel, nor reported so far as we have been able to discover, bearing the slightest resemblance to the present, *in which the judgment*

*has not been opened, or set aside, and the defendant allowed to make his defence.*  Certainly not one, in which the defendant, as in this case has *sworn* and *proved* that the attorney had no authority to appear for him, and that he believes he has a just and legal defence to the whole of plaintiff's claim.

But, we are told, and authorities are cited to show, that this judgment should be permitted to stand, because Mr. Patterson, the attorney *who appeared,* and *who now swears* that he acted without authority, is personally responsible, and able pecuniarily to respond in damages to the defendant, his assumed client.   That it is only where the attorney appearing and acting without authority, is too poor to respond in damages, or is a suspicious character, that the court should interfere and strike off an award, or open a judgment.   An argument and doctrine, which appear to be as *false in principle,* as they certainly must and would be *pernicious in practice.*

But it is argued that Mr. Patterson is a respectable member of this bar, and that by permitting him to practice, we recommend him to public confidence. Grant it, in its fullest and broadest sense, and what does the admission prove?  Can a stream rise higher than its source or fountain head?  Did this court, could it, confer a power upon him, when he was admitted to practice law, which it could not itself wield or exercise?   Has this court power to order or direct an appearance to be entered, by *any of its attorneys or officers,* for a defendant against whom a suit has been brought, and upon whom the sheriff is too indolent to serve the writ?   Certainly not, and if not, how can an attorney, be said to have done, under an authority conferred upon him by the court, when he was admitted, *that which the court could in no emergency order to be done.*

Who ever supposed or believed that when the court admits an attorney to practice law within its jurisdiction, it confers upon him authority to do that which is unlawful, to enter an appearance in any and every suit brought, without being retained or authorized by the defendant, and says to *him,* we will hold such an act valid, whether the party sued be willing to employ him or not, and whether authorized or not, his act shall equally bind a defendant.   A mere statement of such proposition, shows its absurdity.   Judge McLean, in 6 Howard, 163, takes what we conceive to be a proper view of the matter, when he says, "the evidence relative to the appearance of counsel, does not contradict the record, but explains it, the appearance was the act of counsel, and not the act of the Court."   "The appearance by counsel who had no authority to waive process, or defend the suit may be explained."   "An appearance by counsel under such circumstances to the prejudice of a party, subjects the counsel to damages, but *this would not sufficiently protect the rights of*

*the defendant.    He is not bound by the proceedings, and there is no principle which can afford him adequate protection.*

And Judge Huston in 3 Penna. Rep. 76, in speaking of the stress laid on the fact, that the attorney was of good character and responsible in point of property says, *"How can that alter the case?*  How long will an attorney be responsible in property, who adopts such a practice?" "When is his responsibility to be tested, or how? If this conduct is sanctioned, there is an end of all distinction between bonds with warrant to confess judgment and common bonds. Nay, every common demand. No man can, however careful and methodical, know how to arrange his business, *or know when to look for an execution."*  In that case *judgment was set aside,* and even Judge Gibson, who dissented, adhering to the old doctrine, that the interposition of the court is to be invoked only in the last resort, as where the attorney is not of sufficient estate to answer the consequences in an action of damages, says, in his opinion, that "a judgment rendered without a semblance of authority, may be set aside on motion, and due consideration of the circumstances."

Again, it is argued, that this judgment should be allowed to stand, in order to protect the innocent plaintiff.

How can he be more innocent than the defendant, who has never been served with the process of the court, nor brought within its jurisdiction, who has never had his day in court? He was not *obliged* to pay any attention to, or answer the letters of an attorney he never employed, nor *from those letters take notice that an action was brought against him.* The first *legal notice* he had of a suit against him, was when the sheriff came with an execution to levy on his property.

*He* is as *innocent* as the plaintiff, and as much entitled to protection. Why, then, should *he* be compelled to bring *his* action against the attorney, rather than the plaintiff?

But in this case plaintiff and his counsel knew before they obtained the award and judgment, that there had been no service on the defendant, and that the attorney who appeared for him did so without authority, and that defendant had refused to recognize him as his counsel, or ratify his acceptance and appearance, and knowing this, obtained the award and issued execution upon it.   The Legislature of Pennsylvania, with a view no doubt of breaking up and destroying the very pernicious and unprofessional practice of attorneys entering appearances without being retained or employed, and without authority, and appearances d. b. e., which now seem to mean, *I will be his counsel,* provided, 1st, *That he wishes counsel,* and 2d, *That he employs me,* has placed it in the power of every litigant to know whether the attorney representing his adversary, is authorized to do so or not, by enacting the 71st section of the Act of April 14, 1834, which declares that "the attorney for the plaintiff, in

*every action shall*, if required, file his *warrant of attorney* in the office of the prothonotary, or clerk of the court in which such action shall be depending, at the term of the court in which he declares; and the attorney for the defendant *shall*, if required, file in like manner, *his warrant of attorney* at the term of the court in which he appears.''

The great weight of authority shows that the award of arbitrators and judgment in this case, being improperly obtained should be set aside and the defendant be permitted to enter his plea, and make his defence to the action, and if there were no authorities nor precedents on the subject, every principle of equity and justice demands that no judgment so obtained should be permitted to stand. We therefore set aside the award and allow the defendant to enter an appearance and plead to the action.